1  MICHAEL J. KENNEDY. ESQ.
   Law Offices of Michael Jerome Kennedy, PLLC
2  Nevada State Bar #10103;
   Colorado State Bar #17868; California State Bar #193901
3  333 Flint Street, Reno, Nevada 89501
   Telephone: 775-221-7100 (office)
4  Telephone: 775-233-0914 (cell)
   michael@mjkennedylaw.com
5  Attorney for Defendant Baljit Singh

6

7

8                 IN THE UNITED STATES DISTRICT COURT

9                    FOR THE DISTRICT OF NEVADA

10

11  UNITED STATES OF AMERICA,        )    3:13-cr-117-LRH-VPC
                                      )
12              Plaintiff,            )    **Defendant B. Singh's Motion To Suppress**
                                      )    **Evidence Obtained And Derived Both**
13       v.                           )    **From Electronic Surveillance And Physical**
                                      )    **Searches Conducted Pursuant to The**
14  BALWINDER SINGH,                  )    **Foreign Intelligence Surveillance Act of**
         aka Jhajj,                   )    **1978 (FISA), As Amended, 50 U.S.C. §§**
15       aka Happy,                   )    **1801-1812 And 1821-1829.**
         aka Possi,                   )
16       aka Baljit Singh             )    (***Franks*** **Evidentiary Hearing Requested**)

17              Defendant.

18  _____

                            **CERTIFICATION**

19       This motion is timely filed on or before **July 1, 2016**. ECF No. 44. Responses are due on or

20  before **October 3, 2016**; replies are due on or before **November 3, 2016**. ECF No. 44.

21                             **MOTION**

22       Defendant Baljit Singh (charged as Balwinder Singh) ("Singh"), by and through his attorney,

23  moves to suppress all fruits of the government's Foreign Intelligence Surveillance Act (FISA)

24  electronic surveillance and physical searches. First, Singh's counsel requests that this Court conduct

25  an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), in order to provide

26  Singh's counsel with the opportunity to prove that the FISA applications and FISA affidavits made

27  to the Foreign Intelligence Surveillance Court (FISC) recklessly omitted material information from

28

                                    1

1   the FISA applications. In connection with this request, Singh's counsel has filed a motion for

2   disclosure of FISA applications and affidavits and FISC orders and extensions. Second, Singh's

3   counsel contends that the government under FISA must satisfy this Court that all statutory

4   requirements were met when conducting its two plus years of FISA-based electronic surveillance and

5   physical searches. In connection with that motion, Singh's counsel has filed a motion for an *in*

6   *camera*, *ex parte* review by this Court, if the government opposes disclosure on the basis that it

7   would harm the national security of the United States and this Court does not otherwise order

8   disclosure. Third, Singh's counsel contends that FISA, as amended, is unconstitutional.

9   **POINTS & AUTHORITIES**

10  I.      **Background To The Singh Investigation Before FISA Applications**.

11          The FBI initiated what it termed a "full investigation" of Singh on August 9, 2011. USAO

12  001649. However, no discovery document produced to date indicates what, if anything, the FBI did

13  in this investigation between August 9, 2011 and September 14, 2011. And, based upon the

14  discovery produced to date from September 14, 2011 through October 28, 2011, it appears that the

15  FBI did little, if any, investigation at all, before making application for electronic surveillance under

16  50 U.S.C. § 1804.

17          A.      **September of 2011 Investigation**.

18          On September 14, 2011, discovery indicates that the FBI was told by a Special Agent of the

19  Department of Homeland Security that Singh received Legal Permanent Resident status on April 4,

20  2011 which expires in May of 2021. USAO 001701. The FBI then requested Singh's immigration

21  or "A" file from the Department of Homeland Security for "further review." USAO 001701. On

22  September 14, 2011, discovery also indicates that the FBI spoke with a single witness, Kamwal

23  Khera, a former employer of Singh and Singh's wife. USAO 005577-005580. He made various

24  allegations that Singh had told him many things but the discovery omits investigation to corroborate

25  any of these mere allegations or the motives underlying the making of the allegations. On September

26  27, 2011, the FBI reviewed Singh's "A" file at the Reno office of the Department of Homeland

27  Security. USAO 001649.

28

1    On September 28, 2011, the FBI contacted Kamwal Khera again. USAO 005575. Kamwal

2    Khera told the FBI that he employed Singh from May of 2009 to April of 2010. USAO 001649. On

3    September 29, 2011, the four FBI Special Agents conducted a surveillance of Singh near the Century

4    Park Lane 16 movie theater. USAO 003694-003695. The FBI Special Agents saw Singh park his red

5    semi-tractor trailer in a vacant lot west of the movie theater and then walk westbound on Cadillac

6    Avenue until walking into the Lakeview Apartment complex toward Building 602. *Id*.  At this point,

7    Singh's surveillance was discontinued. *Id*. On September 30, 2011, the FBI photographed Singh's

8    semi truck with California license plate #VP68895. USAO 003881.

9        B.    **October of 2013 Investigation**.

10   On October 13, the FBI phoned the California Department of Motor Vehicles regarding

11   California license plate #VP68895. USAO 003688-003689. The FBI learned between October 13

12   and 17, 2011 that Singh purchased the semi-truck from Folsom Trucking in California and was most

13   likely in the process of selling the semi-truck to a Kaur Tejinder who had not completely paid for

14   the truck. *Id*. On October 14, 2011, the FBI had a person (whose identity is blacked out in discovery)

15   initiate surveillance at 602 Brinkby Avenue, Reno, Nevada where this person saw Singh's wife at

16   the bottom of the stairwell just underneath the balcony that read "308". USAO 003889. Discovery

17   produced to date shows no other surveillance, interviews or investigation in October of 2011.

18   That is the some total of the "investigation" conducted in August, September and October

19   by the FBI as shown by the discovery documents to date. Therefore, the FBI did little, if any,

20   investigation, prior to making its initial FISA electronic surveillance application and receiving an

21   order authorizing the same from the FISC.

22       C.    **FISA electronic surveillance and FISA physical searches and seizures**.

23   By no later than October 28, 2011, two things had happened: (1) a federal officer had made

24   FISA application under 50 U.S.C. § 1804 to a judge having jurisdiction under 50 U.S.C. § 1803 for

25   an order approving electronic surveillance with Singh as the target of that application; and (2) the

26   FISC under 50 U.S.C. § 1805 had issued an ex parte order approving electronic surveillance with

27

28

1    Singh the target of that application. See USAO 004945-004950 (unofficial and uncertified 2011-10-

2    28 transcript of intercepted audio phone call allegedly made by "Balwinder" to "Unknown Male").

3    The FISA applications must have sought multiple extensions for electronic surveillance as

4    surveillance continued up to and including December 17, 2013, which is when Singh was "arrested"

5    by federal agents. ECF No. 11 ("person was arrested on 12-17-13").

6          Additionally, prior to April 25, 2012, a FISA application was made under 50 U.S.C. § 1823

7    to a judge having jurisdiction under 50 U.S.C. § 1803 for an order approving physical searches and

8    seizures, and the FISC under 50 U.S.C. § 1824 had issued an ex parte order approving physical

9    searches with Singh as the target of that application. USAO 003585. Subsequent FISA applications

10   or extensions must have been made and the FISC issued ex parte orders for the August 21, 2012,

11   March 31, 2013, November 19, 2013, November 30, 2013, and December 11, 2013 physical

12   searches. USAO 003585-003588.

13         None of the government's FISA applications, affidavits, certifications, extensions, FISC

14   orders, and other documents relating to the FISA electronic surveillance and physical search have

15   not been provided to Singh's counsel.

16   II.   **The Prosecution Has Given Notice Of Its Intent To Use Foreign Intelligence
           Surveillance Act Evidence Obtained Or Derived From Electronic Surveillance
17         Under 50 U.S.C. §§ 1806(c) And 1825(d). Therefore, This Motion To Suppress
           Is Ripe And Singh Has Standing**.
18
19         On December 20, 2013, the prosecution filed its notice of intent to use Foreign Intelligence

20   Surveillance Act (FISA) information in this prosecution. ECF No. 5. Specifically, the notice of intent

21   stated that:

22              pursuant to Title 50, United States Code, Sections 1806(c) and
                1825(d), the United States intends to offer into evidence, or otherwise
23              use or disclose in any proceedings in the above-captioned matter,
                information obtained or derived from electronic surveillance and
24              physical searches conducted pursuant to the Foreign Intelligence
                Surveillance Act of 1978 (FISA), as amended, ... .

25   ECF No. 5, pp. 1:21-2:02.

26   ///

27   ///

28

                                              4

1    Based upon this notice of intent, a motion to suppress is ripe and Singh has standing to

2  pursue suppression. 18 U.S.C. § 1806(e) provides the following regarding electronic surveillance:

3           Any person against whom evidence obtained or derived from an
            electronic surveillance to which he is an aggrieved person is to be, or
4           has been, introduced or otherwise used or disclosed in any trial,
            hearing, or other proceeding in or before any court ... of the United
5           States ... may move to suppress the evidence obtained or derived from
            such electronic surveillance on the grounds that– (1) the information
6           was unlawfully acquired; or (2) the surveillance was not made in
            conformity with an order of authorization or approval. Such a motion
7           shall be made before the trial, hearing, or other proceeding unless
            there is no opportunity to make such a motion or the person was not
8           aware of the grounds of the motion.

9  18 U.S.C. § 1806(e).

10    And 18 U.S.C. § 1825(f) provides the following regarding physical searches:

11          (1) Any person against whom evidence obtained or derived from a
            physical search to which he is an aggrieved person is to be, or has
12          been, introduced or otherwise used or disclosed in any trial, hearing,
            or other proceeding in or before any court ... of the United States ...
13          may move to suppress the evidence obtained or derived from such
            search on the grounds that – (A) the information was unlawfully
14          acquired; or (B) the physical search was not made in conformity with
            an order of authorization or approval.
15          (2) Such a motion shall be made before the trial, hearing, or other
            proceeding unless there is no opportunity to make such a motion or
16          the person was not aware of the grounds of the motion.

17  18 U.S.C. § 1825(f). Therefore, this motion to suppress is ripe.

18    Further, Singh has standing. 18 U.S.C. §§ 1806(e) & 1825(f). An "aggrieved person" under

19  50 U.S.C. § 1801(k) is "a person who is the target of an electronic surveillance or any other person

20  whose communication or activities were subject to electronic surveillance." 50 U.S.C. § 1801(k).

21  And an "aggrieved person" under 50 U.S.C. § 1821(2) is "a person whose premises, property,

22  information, or material is the target of physical search or any other person whose premises,

23  property, information or material was subject to physical search." 50 U.S.C. § 1821(2).

24    Singh is an "aggrieved person" under both 50 U.S.C. §§ 1801(k) and 1821(2). *United States*

25  *v. Cavanagh*, 807 F.2d 787, 789 (9th Cir. 1987) (target of electronic surveillance and party to an

26  intercepted communication each have standing to challenge the lawfulness of the surveillance).

27  Singh not only appears to be a party to thousands of intercepted communications but also the target

28

of numerous FISA applications with the first one prior to October 28, 2011. Therefore, he has standing to pursue this motion to suppress under 50 U.S.C. §§ 1806(g) and 1825(h).

III.   **Singh's Counsel Requests A Franks Hearing Because Material Information Recklessly Omitted From The FISA Applications And Affidavits Made To The FISC Impacts The Necessary Findings Under 50 U.S.C. §§ 1805 And 1824**.

A. ***Franks* principles apply to FISA motions to suppress**.

The principles underlying *Franks v. Delaware*, 438 U.S. 154 (1978) apply in the context of FISA and FISC motions to suppress. *United States v. Duggan*, 743 F.2d 59, 77 n.6 (2d Cir. 1984) (concluding that "the principles set forth in [*Franks*]" govern in FISA proceedings). In *Franks*, the Supreme Court held:

> We reverse, and we hold that, where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

*Franks v. Delaware*, 438 U.S. 154, 155-156 (1978).

Courts have extended the *Franks* standard with regard to intentional or reckless material false statements to intentional or reckless material omissions. In *United States v. Stanert*, 762 F.2d 775, 780-81, *modified*, 769 F.2d 1410 (9th Cir. 1985), the Ninth Circuit held:

> Today, we expressly hold that the Fourth Amendment mandates that a defendant be permitted to challenge a warrant affidavit valid on its face when it contains deliberate or reckless omissions of facts that tend to mislead. ... The use of deliberately falsified information is not the only way by which police officers can mislead a magistrate when making a probable cause determination. By reporting less than the total story, an affiant can manipulate the inferences a magistrate will draw. To allow a magistrate to be misled in such a manner could denude the probable cause requirement of all real meaning.

*Stanert*, 762 F.2d at 781, citing *Franks*, 438 U.S. at 168.

Misstatements or omissions of government officials which are incorporated in an affidavit for a search warrant are grounds for a *Franks* hearing, even if the official at fault is not the affiant. *United States v. DeLeon*, 979 F.2d 761, 763-64 (9th Cir. 1992). The defendant need not present "clear proof of deliberate or reckless omissions or misrepresentations at the pleading stage." *United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1111 (9th Cir. 2005). *United States v. Chesher*, 678 F.2d

6

1  1353, 1362 (9th Cir. 1982), citing *Franks*, 438 U.S. at 171 n. 8. *See United States v. Kyllo*, 37 F.3d

2  526, 529-30 (9th Cir. 1994) (vacating and remanding for *Franks* hearing).

3        B.  **The Necessary Findings Under 50 U.S.C. §§ 1805 and 1824**.

4        Upon an application made pursuant to 50 U.S.C. §§ 1804 and 1823, the FISC judge shall

5  enter and ex parte order as requested or modified approving the electronic surveillance and physical

6  searches if the judge finds that: (a) the application has been made by a Federal officer and approved

7  by the Attorney General; (b) the proposed minimization procedures meet the definition of

8  minimization contained in 50 U.S.C. § 1801(h); and (c) the application which has been filed contains

9  all statements required by 50 U.S.C. § 1804 for electronic surveillance and 50 U.S.C. § 1823 for

10 physical searches and, if the target is a United States person, the certification or certifications are not

11 clearly erroneous on the basis of the statement made under 50 U.S.C. § 1804(7)(E) for electronic

12 surveillance and 50 U.S.C. § 1823(a)(6)(E) for physical searches and any other information furnished

13 under 50 U.S.C. § 1804(d) for electronic surveillance and 50 U.S.C. § 1823(a)(6)(E). *See* 18 U.S.C.

14 §§ 1805(a)(1), (3), & (4); 1824(a)(1), (3), & (4).

15       Review of the fruits of the electronic surveillance and physical searches show Singh is the

16 target of the applications. Singh is a "United States person"  because he is alien lawfully admitted

17 for permanent residence (as defined in section 1101(a)(2) of Title 8). 50 U.S.C. § 1801(j); USAO

18 001701.

19       None of these necessary findings under 50 U.S.C. §§ 1805(a)(1), (3), & (4) or 1824(a)(1),

20 (3) and (4) would be subject to the *Franks* hearing request. Accordingly, these findings would be

21 subject to challenge by Singh if disclosure is granted and otherwise subject to this Court's statutory

22 obligation to conduct an *in camera, ex parte review. See infra*, pp. 12:15-13:19.

23       The final necessary finding the FISC judge must make for issuance of the ex parte order for

24 electronic surveillance is the following finding:

25                 (2) on the basis of the facts submitted by the applicant there is
                probable cause to believe that–(A) the target of electronic surveillance

26                 is a foreign power or agent of an agent of a foreign power: *Provided*,
                that no United States person may be considered a foreign power or

27                 agent of a foreign power solely upon the basis of activities protected
                by the first amendment to the Constitution of the United States; and

28

1
      (B) each of the facilities or places at which the electronic surveillance is directed is being used, or is about to be used, by a foreign power or agent of a foreign power;

2

3   50 U.S.C. § 1805(a)(2).

4         The final necessary finding the FISC judge must make for issuance of the ex parte order for

5   the physical search is the following finding:

6         (2) on the basis of the facts submitted by the applicant there is probable cause to believe that–(A) the target of electronic surveillance

7   is a foreign power or agent of an agent of a foreign power: *Provided*, that no United States person may be considered a foreign power or

8   agent of a foreign power solely upon the basis of activities protected by the first amendment to the Constitution of the United States; and

9   (B) each of the facilities or places at which the electronic surveillance is directed is being used, or is about to be used, by a foreign power or

10  agent of a foreign power;

11  50 U.S.C. § 1824(a)(2).

12        Each of these necessary final findings regarding probable cause is the subject of the *Franks*

13  hearing request. *Dagan*, 743 F.2d at 77 n.6. The standard for the determination of probable cause

14  under 50 U.S.C. §§ 1805(a)(2) and 1824(a)(2) is this:

15        In determining whether or not probable cause exists for an order under subsection (a)(2), a judge may consider past activities of the

16  target, as well as facts and circumstances relating to current or future activities of the target.

17  50 U.S.C. §§ 1805(b) & 1824(b).

18

19        There is no basis under 50 U.S.C. §§ 1801(a) and 1821(1) to find that Singh is a "foreign

20  power." 50 U.S.C. § 1801(a)(1)-(7). Further, due to the fact that Singh is a "United States person"

21  under 50 U.S.C. § 1801(I), the definition of "agent of foreign power" in 50 U.S.C. § 1801(b)(1), is

22  inapplicable to Singh. 50 U.S.C. § 1801(b)(1) ("any person other than a United States person, who

23  ... ."); 50 U.S.C. § 1821(1).

24        The only remaining statutory basis to support a probable cause finding that Singh is an "agent

25  of a foreign power" is under 50 U.S.C. § 1801(b)(2). Discovery provides no basis to conclude that

26  probable cause exists to support a finding that Singh is a person who engages in clandestine

27  intelligence gathering under 50 U.S.C. §§ 1801(b)(2)(A) or (B), which activities involve or may

28  involve a violation of the criminal statutes of the United States. And discovery provides no basis to

conclude that probable cause exists to support a finding that Singh is a person who knowingly engages in "sabotage" as defined in 50 U.S.C. § 1801(d) under 50 U.S.C. § 1801(b)(2)(C).

Accordingly, "knowingly engages in ... international terrorism, or activities that are in preparation therefor, for or on behalf of a foreign power" under 50 U.S.C. § 1801(b)(2)(C) or "knowingly enters the United States under a false or fraudulent identity for or on behalf of a foreign power" under 50 U.S.C. § 1801(b)(2)(D) are the specific findings Singh's counsel requests the opportunity to prove at a *Franks* evidentiary hearing that probable cause is lacking to support these findings because the FISA applications and affidavits recklessly omit material information.

C.   **Singh Has Made A Substantial Preliminary Showing That FISA Applications And Affidavits Recklessly Omitted Material Facts Necessary To The Finding That Singh Is An Agent Of Foreign Power By Knowingly Engaging In International Terrorism, Or Activities That Are In Preparation Therefor, For Or On Behalf Of, A Foreign Power**.

A person who knowingly engages in international terrorism for a group which is engaged in international terrorism is an agent of a foreign power. 50 U.S.C. §§ 1801(a)(4) & 1801(b)(2)(C). "International terrorism" in turn means activities that:

> (1) involve violent acts or acts dangerous to human life that are violations of the criminal laws of the United States ... or that would be a criminal violation if committed in the jurisdiction of the United States ... (2) appear to be intended–(A) to intimidate or coerce a civilian population; (B) to influence the policy of a government by intimidation or coercion; or (C) to affect the conduct of a government by assassination or kidnapping; and (3) occur totally outside the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to coerce or intimidate, or the locale in which their perpetrators operate or seek asylum

50 U.S.C. § 1801(c).

Singh's counsel contends that the 2011 FISA applications and affidavits recklessly omitted the material facts relating to the 2009 acquittal of the individual who Indian authorities claim planted bombs in two incidents in the State of Punjab, India, and who Indian authorities further claim did so at the direction Balwinder Singh. In January of 2009, Satnam Singh @ Satta, S/o Resham Sing, Caste Jatt, R/o Lasuri, PS: Shahkot, District-Jalandhar, was **acquitted** of all criminal charges of murder, attempted murder, and explosives violations relating to two bomb blast cases in the State

1   of Punjab, India. The only supposed "link" between these two incidents, Satnam Singh Satta, and

2   Balwinder Singh was supposedly supplied by Satta. These facts are exactly the kind of fact a judge

3   under FISC would find essential and its omission would be critical to any finding regarding alleged

4   international terrorism.

5       The first incident arose from an April 28, 2006 bomb blast in the District of Jalandhar, State

6   of Punjab, India, where reportedly three individuals were killed and at least ten individuals sustained

7   serious injuries. The second incident arose from a May 24, 2006 bomb blast where an empty bus

8   caught fire but no casualties were reported. Satnam Singh Satta was arrested in June of 2006 by

9   Indian police who claimed he had planted the bombs. Those same Indian police also claimed that

10  Satnam Singh Satta did so at the direction of Balwinder Singh. However, three years later, Satnam

11  Singh Satta was acquitted and no appeal was taken. Indian authorities charged Balwinder Singh with

12  these same charges in 2006 based upon their claim that Satnam Singh Satta "confessed" to planting

13  the bombs and he "confessed" that he did so at the direction of Balwinder Singh. That claim of

14  "confession" was not backed up by facts to prove that either Satnam Singh Satta or Balwinder Singh

15  had any role at all in these two bombings.

16      Therefore, the omission of these material facts is a substantial preliminary showing under

17  *Franks* which calls into question the FISC ex parte order for electronic surveillance and physical

18  searches based upon facts submitted by the applicant to support a finding that there is probable cause

19  to believe the target, Singh, knowingly engages in international terrorism. And, the omission of these

20  material facts hides what happened here. Without the evidence in 2011 to even make a probable

21  cause criminal terrorism case against Balwinder Singh after the 2009 acquittal of Satnam Singh

22  Satta, the Indian government relied upon outsourcing to the FBI and the United States to make a

23  criminal case through electronic surveillance and physical searches. Rather than obtaining a warrant

24  under the Fourth Amendment to justify the electronic surveillance and physical searches, these

25  governments used the guise of having a significant interest in the targeted person for foreign

26  intelligence purposes to build two criminal cases. And the assertion of "significant interest" is now

27  almost un-reviewable since the amendments to FISA under the Patriot Act.

28

1         Further, the reckless material omission of the true facts relating to Kamwal Khera, the single

2 witness the FBI spoke with on September 14 and 28, 2011, including the true facts of his claim of

3 status within the United States, the true facts of his relationship with Singh's wife, the true facts of

4 his motivations for speaking with the FBI about Singh – are further areas subject to adversarial

5 challenge in a *Franks* evidentiary hearing to the FISA applications and affidavits and FISC orders

6 and extensions.

7         D.     **Singh Has Made A Substantial Preliminary Showing That FISA Applications And Affidavits Recklessly Omitted Material Facts Necessary To The Finding That Singh Is An Agent Of A Foreign Power By Knowingly Enters The United States Under A False Or Fraudulent Identity For Or On Behalf Of A Foreign Power**.

10         A person who knowingly enters the United States under a false or fraudulent identity for or

11 on behalf of a foreign power is an agent of a foreign power. 50 U.S.C. § 1801((b)(2)(D). Singh's

12 counsel contends that recklessly omitted from the FISA Applications and Affidavits is that Singh's

13 immigration file contains proof that he did not enter the United States under a false or fraudulent

14 identity. Within Singh's immigration file are copies of Indian documents showing a date of birth of

15 1975-02-15 in the name of Baljit Singh. USAO 000839-000941. Discovery shows that follow-up

16 investigation post-FISA applications has found no birth certificate record or identification card

17 record to dispute Singh's immigration file. Taken together, these facts are further proof for the need

18 for an adversarial challenge in a *Franks* evidentiary hearing to the FISA application and affidavits

19 and FISC orders and extensions.

20         E.     **Notwithstanding The Inherent Difficulties Applying *Franks* In The FISA Application And FISC Order Context, Singh Has Made A Concrete Factual Preliminary Showing Of Reckless Material Omissions Regarding The Most Salient Facts Concerning International Terrorism** .

23         Singh's counsel requests that this Court recognize the inherent difficulty in applying *Franks*

24 principles to FISA applications and FISC orders. As the court observed in *United States v. Belfield*,

25 692 F.2d 141 (D.C. Cir. 1982):

26                We appreciate the difficulties of appellants' counsel in this case. They must argue that the determination of legality is so complex that an adversary hearing will full access to the relevant materials is

28

1  
2  

> necessary. But without access to the relevant materials their claim of completeness can be given no concreteness. It is pure assertion.

3  
4  

> Congress is also aware of these difficulties. But it chose to resolve them through means other than mandatory disclosure. ... [i]t cannot be said that this exclusion [of defendants from the process] rises to the level of constitutional violation.

5   *United States v. Belfield*, 692 F.2d 141, 148 (D.C. Cir. 1982). *See also United States v. Ott*, 827 F.2d

6   473, 476-477 (9th Cir. 1987) (no due process right to disclosure of FISA materials).

7          Despite these inherent difficulties, Singh's counsel has made a concrete showing with

8   reference to facts – and not mere assertions – in support of his request for a *Franks* evidentiary

9   hearing. And the concrete facts are the most salient facts with respect to the government's claim of

10  Singh's participation in the necessary acts under 50 U.S.C. § 1801(c) to find "international

11  terrorism" to support the derivative claim that Singh is a agent of a foreign power under 50 U.S.C.

12  § 1801(b)(2)(c), (d) or (e). For these reasons, a *Franks* evidentiary hearing is necessary. In

13  connection with the Franks hearing, this Court should grant Singh's motion for disclosure of FISA

14  applications and affidavits and FISC orders and extensions.

15  **IV.   The FISA Derived Evidence Is Subject To Suppression If The Government Did**
16  **        Not Establish The Other Necessary Statutory Prerequisites Apart From the**
        **        Probable Cause Assessment**.

17         This Court is required to review each application to ensure that it meets the additional

18  standards set out by FISA. Because the Court examines FISA materials de novo, no deference is

19  accorded the FISC judge's assessment of the executive branch certifications. *E.g.*, *United States v.*

20  *Dumeis*, 424 F.3d 566, 578 (7th Cir. 2005).

21         First, this Court must find that: (1) the application was made by a Federal officer; (2) the

22  application was approved by the Attorney General; (3) the proposed minimization procedures meet

23  the statutory definitions of minimization contained in 50 U.S.C. § 1801(h) for electronic

24  surveillance, and 50 U.S.C. § 1821(4) for physical searches. *See* 50 U.S.C. §§ 1805(a), 1824(a). The

25  unofficial and uncertified transcripts of intercepted communications which have been produced are

26  consistent with an indiscriminate plan of electronic surveillance rather than one which follows proper

27  minimization procedures. *See Belfield*, 692 F.2d at 147 ("surveillance records which include a

28

significant amount of nonforeign intelligence information, calling into question compliance with the minimization standards in the order.").

Second, this Court must find that the application contains the statements and certifications required by the statute, and that those statements and certifications were made by a designated official. 50 U.S.C. §§ 1805(4), 1824(a)(4). The following statements and certifications must accompany any application for an order approving searches or surveillance under FISA: a statement of the proposed minimization procedures; a statement of the nature of the foreign intelligence information sought and the type ;of communications or activities to be subjected to the surveillance, or the manner in which the physical search is to be conducted; certifications by an authorized official that the certifying official deems the information to be sought to be foreign intelligence information; a significant purpose of the surveillance or search is to obtain foreign intelligence information; and that such information cannot reasonably be obtained by normal investigative techniques; and a statement explaining the basis for the certifications. 50 U.S.C. §§ 1804(a), 1823(a).

Because Singh is a United States person, this Court must assess these statements and executive branch certifications to determine that they are not "clearly erroneous." 50 U.S.C. §§ 1805(a)(4), 1825(a)(4). A "clearly erroneous" finding is established when "although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum, Co.*, 333 U.S. 364, 395 (1948).

## V.    **FISA, As Amended By The Patriot Act, Violates The Fourth Amendment**.

District Court Judge Aiken from the District of Oregon got it right in her constitutional analysis of 50 U.S.C. §§ 1804, 1823, as amended by the Patriot Act, in the now vacated judgment in *Mayfield v. United States*, 504 F.Supp.2d 1023 (D. Oregon 2007). Prior to the enactment of the Patriot Act, FISA required executive branch officials to certify to a FISA judge "that the purpose of the surveillance is to obtain foreign intelligence information." *See* 50 U.S.C. §§ 1804(a)(7)(B) (2000). Courts interpreted FISA's "the purpose" language to require a showing that "the primary purpose" of the surveillance is to obtain foreign intelligence. *See*, *e.g.*, *Duggan*, 743 F.2d at 77;

1  *United States v. Johnson*, 952 F.2d 565, 573 (1st Cir. 1991). The substantive issue before Judge

2  Aiken in *Mayfield v. United States*, 504 F.Supp.2d 1023 (D. Oregon 2007), concerned the statutory

3  change following the passage of the Patriot Act to a warrant under FISA now issuing if "a significant

4  purpose" of the surveillance or search is foreign intelligence. *See* 50 U.S.C. §§ 1804(a)(6)(B),

5  1823(a)(6)(B) ("that a significant purpose of the [surveillance] [search] is to obtain foreign

6  intelligence information").

7          Singh's counsel incorporates by reference the District Court's reasoning in *Mayfield*, 504

8  F.Supp.2d at 1036-1043, regarding the unconstitutionality of FISA, as amended by the Patriot Act.

9  Judge Aiken's conclusion as to the unconstitutionality of that dramatic and significant impact on the

10  application of FISA was as follows:

11          the constitutionally required interplay between Executive action,
       Judicial decision, and Congressional enactment, has been eliminated
12          by the FISA amendments. Prior to the amendments, the three
       branches of government operated with thoughtful and deliberate
13          checks and balances – a principle upon which our Nation was
       founded. These constitutional checks and balances effectively curtail
14          overzealous executive, legislative, or judicial activity regardless of
       the catalyst for overzealousness. The Constitution contains bedrock
15          principles that the framers believed essential. Those principles should
       not be easily altered by the expediencies of the moment.

16          Despite this, the FISCR holds that the Constitution need not control
17          the conduct of criminal surveillance in the United States. In place of
       the Fourth Amendment, the people are expected to defer to the
18          Executive Branch and its representation that it will authorize such
       surveillance only when appropriate. The defendant [United States]
19          here is asking this court to, in essence, amend the Bill of Rights, by
       giving it an interpretation that would deprive it of any real meaning.
20          This court declines to do so.

21          ... A shift to a Nation based on extra-constitutional authority is
       prohibited, as well as ill-advised. ... Therefore, I conclude that 50
22          U.S.C. §§ 1804 and 1823, as amended by the Patriot Act, are
       unconstitutional because they violate the Fourth Amendment of the
23          United States Constitution.

24  Mayfield, 504 F.Supp.2d at 1042-1043.

25          The Ninth Circuit vacated the district court's judgment in *Mayfield* because, in light of the

26  limited remedy available to Mayfield under the terms of the Settlement Agreement between Mayfield

27  and the United States, Mayfield lacked standing to pursue his Fourth Amendment claim because his

28

1    injuries already had been substantially redressed by the Settlement Agreement, and a declaratory

2    judgment would not likely impact him or his family. *Mayfield v. United States*, 599 F.3d 964, 966

3    (9th Cir. 2010).

4        While the *Mayfield* district court decision holds no precedential value, the reasoning set forth

5    by the district court is "spot-on." Singh's counsel urges this Court to adopt it and order 50 U.S.C.

6    §§ 1804 and 1823 unconstitutional under the Fourth Amendment. The Ninth Circuit in *Cavanagh*

7    has held that where "the purpose of the surveillance is to obtain foreign intelligence," FISA passes

8    constitutional muster. *Cavanagh*, 807 F.2d at 790-791. In *Sarkissian*, the Ninth Circuit expressly

9    declined to consider whether the primary purpose test was constitutionally required. *United States*

10   *v. Sarkissian*, 841 F.2d 959, 964 (9th Cir. 1988) ("We also decline to decide the issue. We have

11   generally stated the purpose of the surveillance must be to secure foreign intelligence information.").

12   Singh's counsel takes the position that the Ninth Circuit would adopt Judge Aiken's analysis and

13   conclusions if the issue presents itself before the Court.

14        Investigations involving FISA surveillance and searches are different in kind from ordinary

15   criminal investigations. "FISA is meant to take into account the differences between ordinary

16   criminal investigations to gather evidence of specific crimes and foreign counterintelligence

17   investigations to uncover and monitor clandestine activities." *Sarkissian*, 871 F.2d at 965 (citation

18   and quotation omitted). The government did not honor this distinction here, and as a result, the FISA

19   derived evidence is properly suppressed.

20                      **CONCLUSION**

21        This Court should grant Singh's counsel's request for an evidentiary hearing pursuant to

22   *Franks*. In connection with that order, this Court should also order the disclosure of FISA

23   applications, affidavits certifications, and FISC orders and extensions.

24        In the alternative, this Court should conduct an *in camera*, *ex parte*, *de novo* review of the

25   FISA applications, affidavits, and certifications and the FISC orders and extensions and determine

26   whether the same complies with the FISA statutory requirements.

27   ///

28

1    Finally, this Court should find that 50 U.S.C. §§ 1804 and 1823 are unconstitutional because

2  these sections violate the Fourth Amendment if, as here, the "primary purpose" of the application

3  is not foreign intelligence.

4   DATED: June 26, 2016.                     Respectfully submitted,

5                                             */s/ Michael Kennedy*
                                              Michael J. Kennedy, Esq.
6                                             Law Offices of Michael Jerome Kennedy, PLLC
                                              Attorney for Defendant Baljit Singh
7
                                **CERTIFICATE  OF SERVICE**
8
       The undersigned certifies that he is a person of such age and discretion as to be competent
9
   to serve papers and that he served a copy of the foregoing on June 26, 2016 through the Electronic
10
   Filing System to the following:
11
   **for Plaintiff United States**
12  Sue Fahami, Esq.
   Brian L. Sullivan, Esq.
13  Carla B. Higginbotham, Esq
   Assistants United States Attorney
14  United States Attorney's Office, District of Nevada
   100 West Liberty Street
15  Reno, Nevada 89501
   sue.p.fahami@usdoj.gov
16  Brian.Sullivan@usdoj.gov
   carla.higginbotham@usdoj.gov
17  775-784-5438

18  Mara M. Sohn, Esq.
   Trial Attorney
19  United States Department of Justice
   National Security Division
20  Counter-terrorism Section
   950 Pennsylvania Ave., NW
21  Washington D.C. 20530
   202-532-4592
22  mara.kohn2@usdoj.gov

23                                         */s/ Michael Kennedy*
                                           Law Offices of Michael Jerome Kennedy, PLLC
24

25

26

27

28